IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOYCE STURDIVANT, | } |
|     Plaintiff, | } |
| v. | } CIVIL ACTION NO.<br>} 03-AR-0346-S |
| DOLGENCORP, INC., | } |
|     Defendant. | } |

FILED 04 JUL -1 PM 2:48 U.S. DIST. N.D. OF ALA.

ENTERED JUL 01 2004

### MEMORANDUM OPINION

Before the court is the motion of defendant, Dolgencorp, Inc. ("Dolgencorp"), for summary judgment, and the motion of plaintiff, Joyce Sturdivant ("Sturdivant"), to strike portions of Dolgencorp's brief and evidentiary submissions in support of its motion for summary judgment. Sturdivant, a black former employee of Dolgencorp, filed the instant action on February 18, 2003 pursuant to 42 U.S.C. § 1981. Sturdivant made four claims based on alleged race discrimination by Dolgencorp: (1) discriminatory pay, (2) discriminatory discharge, (3) discriminatory failure to promote, and (4) discriminatory failure to train.

### Undisputed Facts

Dolgencorp operates retail discount stores under the name of "Dollar General." Sturdivant began working for Dolgencorp on September 17, 2001 as an assistant manager at the Dollar General



store in Pelham, Alabama.  Sturdivant's starting hourly wage was $6.00, and her immediate supervisor was the manager of the Pelham store, Julia Atchison ("Atchison").  On October 31, 2001, Atchison was replaced by Barry Keller ("Keller"), whereupon Keller became Sturdivant's immediate supervisor.  On January 5, 2002, Sturdivant received a raise from $6.00 to $6.50 an hour.  Keller resigned his position as store manager at the Pelham store in March 2002.  The area manager at Pelham, Amanda Ferguson ("Ferguson"), decided to promote Sturdivant to store manager at Pelham.  Sturdivant officially took over the position on March 23, 2002.  Her immediate supervisor was Ferguson.  As store manager, Sturdivant was paid an annual salary of $26,000.  Ferguson's duties as area manager ended in March 2002.  She was replaced by Richard Lage ("Lage").  Lage held the position as area manager until August 2002, at which time he was replaced by Mary Ann Crews ("Crews").[1]

On September 20, 2002, Crews received a telephone message from Rena Murrah ("Murrah") asking Crews to return her call.  When Crews returned Murrah's call the next day, Murrah explained that on September 20 she had been shopping in the Pelham store for the purpose of buying a keyboard for her son.  She said that when she attempted to cash a check to pay for the keyboard, Sturdivant

---

[1] In Dolgencorp's evidentiary submissions, Crews is also referred to as Mary Ann Farris and Mary Ann Russell.  Her name has changed several times due to a divorce and re-marriage.  The court will refer to her a Crews throughout the opinion for the sake of simplicity.

2

refused to cash it, and the two women got into argument. Murrah complained to Crews that Sturdivant screamed at her and used profanity. After receiving the complaint from Murrah, Crews placed Sturdivant on probation pending the outcome of an investigation.

During her investigation, Crews spoke with three employees at the Pelham store: Telesa Scott ("Scott"), Amanda Price ("Price"), and Abby Braswell ("Braswell"). Scott told Crews that she heard Sturdivant call Murrah a "bitch." Price told Crews that she saw Murrah throw the keyboard at Sturdivant. Price also told Crews that Murrah was rude to Sturdivant both before and after throwing the keyboard. Braswell said that after Murrah left the store, Sturdivant called Murrah a "bitch" in front of other customers. Braswell also told Crews that Sturdivant had cursed in the store on other occasions. Braswell also claimed that Sturdivant did not pay her for four-and-a-half hours of overtime work, and failed to follow-up on Braswell's complaint that one week she was paid for only 32 hours of work when she actually worked 40 hours that week. After her investigation, Crews decided to terminate Sturdivant effective October 1, 2002, and did so.

### Analysis

Sturdivant brings all four of her claims under § 1981. As with claims brought pursuant to Title VII of the Civil Rights Act of 1964, the *McDonnell Douglas* burden shifting analysis applies. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct.

2363, 2377-78 (1989), *Lincoln v. Bd. of Regents of the Univ. Sys. of Ga.*, 697 F.2d 928, 935 n.6 (11th Cir. 1983). Dolgencorp argues that there is no dispute with respect to any material fact bearing on the application of the *McDonnell Douglas* framework to any of the four claims. The court will turn to each claim, and then will express why it is denying Sturdivant's motion to strike the affidavits submitted by Dolgencorp.

### *Pay Claim*

In order to demonstrate a *prima facie* case of racial discrimination with regard to compensation, Sturdivant must show pay disparity. She easily qualifies as a member of a protected group. Her problem is with the requirement that she demonstrate that her job was similar to one or more higher paying jobs occupied by white individuals. *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1529 (11th Cir. 1992). Dolgencorp argues that Sturdivant has not pointed to similar higher paying jobs occupied by white individuals, either with regard to her job as assistant manager or with regard to her job as store manager.

As stated previously, Sturdivant started out as assistant manager with a wage of $6.00 an hour. On January 5, 2002, she received a raise to $6.50. Def. Evid. Submission ex. 2 ¶ 4. In her deposition, Sturdivant said that she was not aware of any assistant manager who made more than she did. Sturdivant Dep. at 20. Sturdivant has failed to create a factual dispute over whether

4

she was paid less than any similarly situated employee, white or black, with respect to the job of assistant manager. The only valid comparator would be another assistant manager, and for aught appearing all assistant manager were paid the same.

Sturdivant relies on two pieces of evidence to support her claim that she was paid less than similarly situated white *store managers*. First, she relies on several charts submitted by her attorney. The charts purport to plot out the salaries of three white managerial employees: Keller, Crews, and Atchison. Pltff. Evid. Submission ex. P. The graphs purport to reflect that Keller, Crews, and Atchison each made a salary of $33,800 while employed as store managers. Sturdivant relies on one document to support her hopeful conclusion that the three employees each made $33,800 as a store manager. The document is a letter addressed to Ferguson, not to Keller, Crews, or Atchison, dated January 22, 1999. The letter confirmed that Ferguson received a promotion from "Certified Training Manager" to "District Manager in Training," not to "*Store Manager*," and that her salary would be $33,800 in her new position. This letter has nothing to do with Keller, Crews, or Atchison, and the letter does not speak to the position of *store manager*. Second, Sturdivant submitted a document entitled "Dollar General Corporation Employment Form." Pltff. Evid. Submission ex. P. The form, dated August 13, 2002, indicates that Atchison made $ 29,900 as a store manager. However, Sturdivant also submitted evidence

5

that in August 2000 Atchison's starting salary as a store manager was $26,000, the same starting salary that Sturdivant received. The evidence indisputably indicates that it was not until two years later that Atchison made $29,900. Sturdivant worked in the position of store manager for less than seven months prior to her termination. In order to establish a *prima facie* case, Sturdivant must point to *similar* higher paying jobs occupied by white individuals. *Miranda*, 975 F.2d at 1529. Atchison's raise after two years of work as a store manager is not relevant to the inquiry. Atchison's starting salary as store manager is the relevant fact. Sturdivant's own evidence demonstrates that Atchison made exactly the same salary as Sturdivant did starting out as a store manager.

Dolgencorp submitted the affidavit of Crews to establish that Sturdivant was not paid less than similarly situated white managers. Dolgencorp's evidence demonstrates that at least six white store managers in Sturdivant's district made less than Sturdivant, and at least three store managers in Sturdivant's district, including Keller at the Pelham store, made the same amount as Sturdivant. Def. Evid. Submission exs. 2, 3. Based on Sturdivant's failure to present any evidence that would indicate she was the victim of discrimination in pay while in the position of store manager, and based on Dolgencorp's uncontradicted evidence that white store managers in the same district as Sturdivant,

6

including her immediate predecessor, made the same or less than Sturdivant, the court finds that there is no genuine issue of material fact with regard to Sturdivant's discriminatory pay claim with respect to the store manager position just as was true of the assistant manager position. Summary judgment will be granted on the discriminatory pay claim.

### Discharge Claim

In order to make out a *prima facie* case of discriminatory discharge, Sturdivant must demonstrate: (1) she belongs to a racial minority, (2) she was subjected to an adverse job action, (3) her employer treated similarly situated white employees more favorably, and (4) she was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). If plaintiff succeeds in establishing a *prima facie* case, the employer must then produce a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Tex. Dep't of Community Aff. v. Burdine*, 450 U.S. 248, 254 (1981). If the employer meets this burden, the employee must offer proof that the articulated reason is pretextual. *See McDonnell Douglas*, 411 U.S. at 804; *Burdine*, 450 U.S. at 256.

Dolgencorp says that Sturdivant has not established the third element of the *prima facie* case. Dolgencorp argues that Sturdivant has failed to demonstrate that similarly situated white employees were not fired, and that, even if she could point to such

employees, Crews, the decisionmaker, was unaware of any alleged misconduct on the part of white employees who were not severely disciplined. In order to meet her burden, Sturdivant must point to employees who are similar in "all relevant respects. In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield*, 115 F.3d at 1562 (citations omitted). If misconduct is an articulated reason for the adverse employment decision, as it is here, the quantity and quality of the similarly situated employees' misconduct must be "nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)(citations omitted). If Sturdivant fails to identify similarly situated white employees who were treated more favorably, "her case must fail because the burden is on her to establish her prima facie case." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)(citing *McDonnell Douglas*, 411 U.S. at 802; *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989)).

Sturdivant argues that Ferguson is a similarly situated white employee who engaged in identical misconduct and who was not fired. Prior to becoming an area manager, Ferguson was a store manager. Sturdivant provides three pieces of evidence that she says

8

demonstrate that, while Ferguson was a store manager, she was treated more favorably than Sturdivant. First, Sturdivant points to a Dolgencorp employment record from May 15, 1998 that indicates that Ferguson temporarily misplaced $497 of petty cash. The money was misplaced at night when the store closed, and was not located until the next morning after the store opened. Ferguson was disciplined for "not controlling company assets." Pltff. Evid. Submission ex. Q. Second, a February 8, 1996 development plan for Ferguson indicated that she needed to work on "better customer service and customer awareness." Pltff. Evid. Submission ex. R. Third, on a job performance review for Ferguson on January 20, 1998, Ferguson was given an 8 out of 10 on customer satisfaction. The reviewer noted that Ferguson "had some customer complaints this year." Pltff. Evid. Submission ex. S.

Crews says that Sturdivant was terminated for (1) rudeness to a customer, (2) use of profanity in the workplace, and (3) failure to pay an employee for hours worked. Def. Evid. Submission ex. 2 ¶¶ 28-30. Sturdivant has not created a fact issue as to whether the quantity and quality of Ferguson's conduct was "nearly identical" to Sturdivant's alleged conduct. Ferguson's failure to control the petty cash does not constitute proof of Sturdivant's claim, because Sturdivant was not accused of misplacing petty cash. The Ferguson customer service complaints are relevant, because that was one of the grounds for terminating Sturdivant. Sturdivant's

9

only evidence is quotations from two reports, one of which gave Ferguson an 8 out of 10 on customer service for the year. There is no evidence in those reports to suggest, much less to prove, that Ferguson ever used profanity toward a customer. There is also no evidence that Ferguson ever used profanity in the workplace, or did not pay an employee for hours worked, the other grounds for terminating Sturdivant's employment. Under these circumstances, the conduct of Ferguson cannot be considered "nearly identical" to that of Sturdivant. See *Maniccia*, 171 F.3d at 1368. Even if the court were to find that Ferguson is a similarly situated employee, Dolgencorp has offered unrebutted evidence that Crews had no knowledge of Ferguson's conduct. Def. Evid. Submission ex. 2 ¶ 44. In order to be considered in determining whether Ferguson and Sturdivant were similarly situated, the decisionmaker must actually know of the similar conduct; namely, customer service complaints against Ferguson. See *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003). Crews stated in her affidavit that she has "no knowledge of any employee who engaged in the conduct Ms. Sturdivant engaged in who was not terminated." Def. Evid. Submission ex. 2 ¶ 44. In fact, the two reports dealing with Ferguson's customer service problems were written prior to Crews' first day of work at Dolgencorp. Crews started working for Dolgencorp on April 4, 1998, and the reports were filled out on February 8, 1996 and January 20, 1998. *Id.* ¶ 2. Ferguson and

Sturdivant are simply not similarly situated employees, and, even if they were, Sturdivant has failed to demonstrate that Crews had knowledge of the customer service complaints against Ferguson. Sturdivant has failed to create a fact issue on the third element of her *prima facie* case.

Assuming that Sturdivant had presented evidence sufficient to establish a *prima facie* case, she has not offered any evidence to demonstrate that Dolgencorp's legitimate reasons for firing her were pretextual. As noted previously, Dolgencorp has offered three reasons for terminating Sturdivant: (1) rudeness to a customer, (2) use of profanity in the workplace, and (3) failure to pay an employee for hours worked. Dolgencorp has submitted the discipline report listing the reasons Sturdivant was fired, and also the affidavit of Crews, which explains her investigation and the conclusions she came to with regard to Sturdivant's alleged misconduct. Sturdivant failed to respond to any of Dolgencorp's evidence on the pretext issue. The court finds that, even if Sturdivant could establish a *prima facie* case, her failure to rebut Dolgencorp's legitimate reasons for terminating her dooms Sturdivant's case at the pretext stage of analysis. The Rule 56 motion will be granted on the discriminatory discharge claim.

### *Failure to Promote Claim*

In order to establish a *prima facie* case of discriminatory failure to promote, Sturdivant must demonstrate: (1) she is a

11

member of a protected minority group, (2) she was qualified for and applied for the promotion, (3) she was rejected in spite of her qualifications, and (4) the person who received the promotion is not a member of a protected minority group and had lesser or equal qualifications. *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998). Sturdivant says she should have been promoted to store manager earlier than the date upon which she was promoted. Sturdivant was promoted to store manager on March 23, 2002, but she says that she should have been promoted to that position on October 31, 2001 instead of Keller, a white male. Dolgencorp says that Sturdivant cannot establish a *prima facie* case for two reasons: (1) she did not apply for the promotion, and (2) Sturdivant has testified that Ferguson, the sole decisionmaker with regard to Keller's promotion, did not discriminate against her. Dolgencorp bases the first argument on the following exchange from Sturdivant's deposition:

> Q: At the time Barry Keller became the store manager, did you want that position?
> A: Did I want the position as store manager?
> Q: Yes.
> A: No.
> Q: At any time when Barry Keller was the store manager, did you want that position?
> A: No.

Sturdivant Dep. at 17. Sturdivant submitted an affidavit in order to respond to this deposition excerpt. In her affidavit,

Sturdivant claims that this statement was not an accurate representation of her desire with regard to the position of store manager. Sturdivant also said that the deposition placed a great amount of stress on her, and that this stress, in addition to the discrimination she suffered at Dolgencorp, may have resulted in confusion during her deposition. Sturdivant Aff. ¶¶ 24-25.

Dolgencorp bases the second argument on the following exchange from Sturdivant's deposition:

> Q: Did Amanda Ferguson ever discriminate against you because of your race?
> A: No.

Sturdivant Dep. at 86-87. Sturdivant also responded to this excerpt in her affidavit. Sturdivant says that this quote was taken out of context, and, again, that she was confused during her deposition.

Dolgencorp argues that Sturdivant's affidavit contradicting her previous deposition testimony must be disregarded as a sham. In *Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984), the Eleventh Circuit held that affidavits that contradict prior deposition testimony submitted to defeat a Rule 56 motion can, in certain circumstances, be disregarded as a sham. In deciding whether an affidavit is a sham, a court must make a distinction "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949,

13

953 (11th Cir. 1986). The *Tippens* court explained the reason for making this distinction:

> The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact.

*Id*. at 953-54. An affidavit should only be disregarded "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, [and that party] thereafter [attempts to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins,* 736 F.2d at 657. The sham affidavit rule is applied sparingly because of the harsh effect it can have. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). Having read Sturdivant's entire deposition, the court finds that the affidavit creates a credibility issue, but is not a transparent sham. First, Sturdivant's quote regarding the store manager position is at odds with other portions of her deposition where she says she was passed over for the job of store manager based on her race. *See* Sturdivant Dep. at 23-25. This testimony

14

gives the impression that Sturdivant desired the position of store manager, and was upset when she was passed over for Keller. This testimony is consistent with her affidavit statement that she desired the job of store manager. Second, with regard to her statement in her deposition about Ferguson, prior to making the statement that Ferguson did not discriminate against her, Sturdivant said that she was passed over for the position of store manager because of her race, and that Ferguson had a role in the decision to pass her over. Sturdivant Dep. at 24-25. This is consistent with her affidavit testimony. Under these circumstances, the court cannot conclude that Sturdivant's affidavit is a "transparent sham." The discrepancies between Sturdivant's deposition and her affidavit present credibility issues that must be resolved by a jury.

Dolgencorp has not yet proffered a legitimate reason why Sturdivant was rejected for the position of store manager. Dolgencorp has offered evidence that the reason was not based on race and that Keller was qualified for the job, but has not set forth any legitimate, non-discriminatory reason for Sturdivant's rejection. Instead, Dolgencorp has relied solely on the deposition excerpts above to defeat Sturdivant's promotion claim. Perhaps, as a result, Sturdivant has not briefed the pretext issue in her response to the motion for summary judgment, and only responded to the two arguments above discussed. Sturdivant has created a fact

issue on her promotion claim. The Rule 56 motion will therefore be denied with respect to the promotion claim.

### Training Claim

Dolgencorp says that Sturdivant cannot make out a *prima facie* case of discriminatory training because (1) she cannot demonstrate that she suffered an adverse employment action, and (2) she cannot demonstrate that Dolgencorp treated similarly situated white employees more favorably than her. The court will first discuss whether Sturdivant has offered proof that she suffered an adverse employment action. The Eleventh Circuit has explained that not all actions adversely effecting an employee constitute "adverse employment actions." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). The conduct must impact the employee's job in a "real and demonstrable way." *Id.* at 1239. While proof of economic consequences is not required in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* The employee must show that the employment action resulted in a "serious and material" change in the terms, conditions, or privileges of employment. *Id.*

Sturdivant says she was subjected to two adverse employment actions relevant to training. First, Sturdivant says she was not given an employee handbook in a timely manner. Sturdivant says that she did not receive an employee handbook until June 15, 2002,

16

271 days after her initial date of employment with Dolgencorp. Doc. 46 ¶ 11. Sturdivant has created a fact issue as to whether she received the employee handbook in a timely manner. Sturdivant has not, however, provided the court with any evidence to suggest that failure to provide her with the handbook affected her employment in a "serious and material" way. *Davis*, 245 F.3d at 1239. Sturdivant has not created a fact issue as to whether receiving her handbook late constituted an adverse employment action.

Sturdivant also claims that "sometime after" Sturdivant was promoted to store manager, she received the store management training guide. *Id.* ¶ 20. Sturdivant says that she was denied the training benefits offered in the training guide. *Id.* ¶ 20. Sturdivant has presented no evidence to support her assertion that she was not given the training guide in a timely manner. Sturdivant has also failed to come forward with any evidence to indicate that failure to receive the guide in a timely manner had a "serious and material" effect on her employment. *Davis*, 245 F.3d at 1239. Therefore, Sturdivant has failed to create a fact issue on her training claim with regard to Dolgencorp's alleged failure to provide her with a store manager training guide.

Dolgencorp also argues that plaintiff has failed to come forward with similarly situated white employees that were treated more favorably than she with respect to training opportunities. As

explained previously, in order to meet her burden, Sturdivant must point to employees who are similar in "all relevant respects." *Holifield*, 115 F.3d at 1562. Sturdivant has not pointed to any white employees who received their employee handbooks or training manuals in what would be characterized as a prompt manner. Instead, Sturdivant says that Dolgencorp treated Crews and Keller more favorably than she, because Dolgencorp promptly processed Crews' and Keller's employment forms. Employment forms, such as a W-4 and an A-4, have nothing to do with Sturdivant's employee handbook or training manual. Sturdivant has not demonstrated a fact issue as to whether similarly situated white employees were treated more favorably than she. Because Sturdivant has failed to present evidence that she suffered an adverse employment action and because she has failed to present evidence of similarly situated employees, the Rule 56 motion will be granted on her training claim.

### Motion to Strike

Sturdivant filed a motion to strike Crews' affidavit on two grounds: (1) it contains conclusions not based on the personal knowledge of Crews, and (2) it contains hearsay. First, Crews affidavit testimony dealt with Sturdivant's starting hourly wage as an assistant manager, Sturdivant's raise while serving as an assistant manager, Sturdivant's starting salary as a store manager, and the salaries of other store managers at the Pelham store and in

18

the area of the Pelham store. Sturdivant says that the affidavit contains conclusory allegations. The court disagrees. The affidavit contains facts, not allegations, to which Crews says she has personal knowledge. It makes sense that Crews would have personal knowledge on such issues, because she served as an area manager for Dolgencorp, and her area contained the Pelham store. Second, Sturdivant says Crews' affidavit contains hearsay. Crews does cite to the statements of employees Scott, Price, and Braswell that she collected during her investigation of Sturdivant's alleged misconduct in September 2002. Dolgencorp correctly points out that these statements are not offered for the truth of the matters asserted, and therefore, are not hearsay. *See* Fed. Rule Evid. 801(c). The statements are offered only to show that the statements were made, that Crews heard the statements, and that she based her decision to terminate Sturdivant on the statements. *See* Doc. 44 at 3. The statements are not offered to show that what the employees said was true. The motion to strike will be denied with respect to Crews' affidavit.

Sturdivant also moves to strike Ferguson's affidavit because it contains conclusory allegations. Ferguson's affidavit explains why Keller was qualified for the position of store manager. The court fails to see, and Sturdivant has not explained, how this is a conclusory allegation. Ferguson stated that she had personal knowledge of the information contained in the affidavit, and she

19

says that she made the decision to promote Keller. The motion to strike will be denied with respect to the Ferguson affidavit.

## Conclusion

The motion for summary judgment will be granted on the pay, discharge, and training claim, and will be denied on the promotion claim. Sturdivant's motion to strike will be denied.

DONE this 1st day of July 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE